UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARTHA HART, PERSONAL REPRESENTATIVE, ESTATE OF OWEN JAMES HART | : : : : |
| Plaintiff, | : CIVIL ACTION NO. 3:10-CV-00975(SRU) |
| vs. | : : |
| WORLD WRESTLING ENTERTAINMENT, INC., VINCE MCMAHON AND LINDA MCMAHON. | : : : |
| Defendant. | : JULY 30, 2010 |

**DEFENDANTS' MOTION TO EXTEND 26(f) CONFERENCE DEADLINE**

Pursuant to Local Rule 7, Defendants, World Wrestling Entertainment, Inc., Vince McMahon and Linda McMahon, by and through their counsel, K&L Gates LLP and Day Pitney LLP hereby move to extend the deadline for conferring pursuant to Local Rule 26(f).  In support hereof, Defendants state as follows:

1. This lawsuit was brought on June 22, 2010 amidst much more fanfare and media attention than traditionally attaches to contractual and intellectual property filings.

2. The plaintiff in this case, Martha Hart, is a Canadian resident and the widow of the late Owen Hart, a performer for World Wrestling Entertainment, Inc. ("WWE") until his tragic death at a WWE event in Kansas City, Missouri over ten years ago, on May 23, 1999.

3. In November 2000, Martha Hart, individually, as representative of the Estate of Owen Hart, and on behalf of their two minor children, executed a full and final settlement of the claims arising out of, or relating to, Owen Hart's death.

4. On Friday, March 26, 2010, WWE received the first communication from Martha Hart since the November 2000 settlement with her. Specifically, a cease and desist letter was sent by fax to WWE on March 26, 2010 by her Canadian counsel demanding that WWE not release a DVD titled "Hart & Soul: The Hart Family Anthology" ("the Anthology").

5. The Anthology contains a compelling documentary about the Hart family of Canada and traces the life history of Mr. Stu Hart, a legendary figure in the business of professional wrestling and the father of Owen Hart, as well as the numerous other members of the Hart family who have performed or are performing for WWE at the present time. The Anthology also contains copyrighted works of WWE featuring various performances of Hart family members, including selected performances of Owen Hart.

6. After sending the cease and desist letter on Friday, March 26, 2010, Martha Hart sought injunctive relief from a Canadian court against WWE on Monday March 29, 2010 regarding the release of the Hart Anthology in a lawsuit which did <u>not</u> name Linda or Vince McMahon as defendants.

7. In the Canadian lawsuit filed in March of this year, Mrs. Hart did not dispute, and indeed admitted, that WWE had the continuing contractual right to use footage of Owen Hart's performances rendered while he was under contract with WWE. Instead, she claimed that Owen Hart's picture on the cover of the DVD's package (with other Hart family members) and the inclusion of his name on the package to accurately describe the content of the DVD's were somehow wrongful.

8. In expedited proceedings, the Canadian court received evidence from the parties, held extensive argument, and denied Mrs. Hart relief on March 31, 2010. Mrs. Hart was also

ordered to pay WWE's legal fees.  A copy of the decision of the Canadian court is attached hereto as Exhibit 1.

9. It is now known that Martha Hart and/or her agents thereafter retained a large New York public relations firm, Hill & Knowlton, and registered a website called www.marthahartsueswwe.com on June 17, 2010.

10. Shortly thereafter, Plaintiff initiated this lawsuit in which she named Vince and Linda McMahon individually as Defendants and took steps to ensure massive and widespread publicity that she had done so.

11. Linda McMahon is a candidate for the United States Senate at this time and the winner of the Republican Convention for the nomination of that party.  The primary will be held on August 10, 2010.

12. In order to publicize the filing of this lawsuit and the *ad hominem* attacks of Martha Hart on the McMahons personally, her agents, Hill & Knowlton, issued an embargoed press release to the media the day before the suit was filed.  The press release highlighted the most polemical allegations of the suit about to be filed.  Exh. 2.  The intended purpose of the "embargo" was to facilitate an unexpected media attack on WWE and Linda McMahon contemporaneous with the filing of the suit the next day.

13. In order to further publicize the allegations of the lawsuit and to further the personal attacks on the McMahons that they knew would receive widespread media attention due to Linda McMahon's candidacy, Hill & Knowlton advised the media that Martha Hart and her legal counsel would also hold a press conference in Hartford the same day suit was filed.

14. On June 22, 2010, Martha Hart and her lead counsel, Mr. Gregg Rubenstein of the Boston office of Nixon Peabody LLP did in fact appear at a press conference held in Hartford to continue the *ad hominem* attacks on WWE and Linda McMahon.

15. Connecticut Rule of Professional Conduct 3.6(a), governing trial publicity, prohibits counsel who participates in litigation from making extrajudicial statements that have a substantial likelihood of materially prejudicing the proceedings. The commentary to the rule makes clear, particularly in civil matters, that comments regarding the character of a party are likely to cause such material prejudice and should not be made.

16. In the June 22, 2010 press release, and ensuing news coverage, Mrs. Hart and her agents took the opportunity to question the moral character of Linda McMahon and Vince McMahon, stating:

> "Unfortunately, even though WWE, Vince McMahon and Linda McMahon were and are well aware of my wishes and desire to shield my children from WWE and its activities, I was shocked to learn earlier this year that they have been using Owen Hart's name and likeness in videos, websites, television programs and print materials. Given this callous, insensitive and irresponsible behavior, <u>one must question the moral character of Vince and Linda McMahon</u> and the manner in which they conduct their business."

Exh. 3, p. 1 (emphasis added)

17. In televised remarks, Martha Hart indicated that voters should "certainly question the moral character" of Linda McMahon. Exh. 4 (video at: http://www.necn.com/06/22/10/Widow-of-Owen-Hart-sues-WWE-McMahons/landing_arts.html?blockID=258965&feedID=4214).

18. The Complaint actually filed was drafted more for media consumption than legal merit and was replete with scandalous, irrelevant and palpably false allegations generally and specifically against Linda McMahon.

19. Although the Complaint, at best, is about stale and time-barred contractual and intellectual property claims, it is laden with polemical, self-serving, and outright false allegations about the wrongful death case in direct violation of the Settlement Agreement and Release which conclusively settled all such claims.

20. Indeed, the very first paragraph of the Complaint opens with a blatantly false allegation designed to smear both of the McMahons individually by claiming that Owen Hart died as a result of a stunt that was "negligently planned, orchestrated and directed by the WWE, namely Vince and Linda McMahon."

21. Although false as to both McMahons, that allegation is brazenly false as to Linda McMahon.  Linda McMahon was not involved in any way in planning, orchestrating or directing the stunt being performed by Owen Hart at the time of his death, which Martha Hart knows as a result of the massive discovery conducted in the wrongful death litigation years ago.  Indeed, Linda McMahon was not even in Kansas City or at the event when Owen Hart performed the stunt and had no personal involvement of any kind in the planning, orchestration or direction of the stunt.

22. Although the facts and circumstances surrounding the death of Owen Hart have no relevance whatsoever to the contractual and intellectual property issues sought to be raised here, the Complaint is replete with similar false allegations about the personal role of the McMahons generally and Linda McMahon specifically.  The false allegation that Linda McMahon "planned, orchestrated and directed the stunt" is repeated elsewhere in the Complaint (see Complaint ¶ 22) and compounded by the equally false allegation that the apparatus for the stunt was chosen "by the McMahons."  Id. at ¶ 24.

23. The false allegations were not limited to Linda McMahon's alleged, but non-existent, role in the planning, orchestration or direction of the stunt being performed by Owen Hart at the time of his death over a decade ago.

24. The Complaint further alleged that: "<u>Earlier this year</u>, the WWE, at the <u>direction of the McMahons</u> . . . produced a video entitled "Hart & Soul: The Hart Family Anthology . . .." (Complaint ¶ 34)

25. In point of fact, and as any reasonable inquiry would have disclosed, Linda McMahon resigned her position with WWE on September 16th of <u>last year</u> when she announced her candidacy for the United States Senate. The press release so stating was at all times available on WWE's website and also contained in filings with the Securities and Exchange Commission. Exhs. 5 and 6.

26. As intended, the false allegations were widely reported due to Linda McMahon's candidacy for the United States Senate and were further fueled by Mrs. Hart granting interviews to www.politico.com on June 22, 2010 and by her subsequent appearance on Good Morning America on July 19, 2010. Exhs. 7 and 8.

27. After suit was filed, service was made on WWE on June 22, 2010. Counsel for Plaintiff then requested undersigned counsel to accept service of the Complaint on behalf of Vince and Linda McMahon, and undersigned counsel agreed to do so.

28. In discussions by email and letters, counsel for Plaintiff insisted that responses be filed by all Defendants sooner than proposed by counsel for the Defendants. As a result, it was agreed that all Defendants would file their initial response or motion aimed at the Complaint by August 11, 2010.

29. The Court was so advised and, on July 8, 2010, entered an order establishing August 11, 2010 as the date for the initial response or motion of the Defendants.

30. On July 8, 2010, due to concerns about the false allegations made against Linda McMahon, and the use of those false allegations to make wholly inappropriate character attacks on her, undersigned counsel requested counsel for Mrs. Hart to re-examine certain allegations and advise whether Plaintiff intended to stand on those allegations or withdraw those allegations because the allegations were made in violation of the rules governing pleadings in federal court. Exh. 9.

31. On July 20, 2010, having received no response from counsel for Mrs. Hart to that request, undersigned counsel again inquired whether Plaintiff intended to file an Amended Complaint to delete the false allegations against Linda McMahon or whether collateral motion practice would be necessary to deal with the false allegations made in the Complaint. Exh. 10.

32. On July 22, 2010, counsel for Plaintiff indicated in response that he in fact did intend to file an Amended Complaint. Exh. 11.

33. Although advising that Plaintiff intended to file an Amended Complaint, counsel for Plaintiff refused to state in ensuing email exchanges when such an Amended Complaint would be filed, whether Plaintiff intended to drop the claims and associated false allegations against Linda McMahon, or whether they intended to abandon any of the claims asserted in the original Complaint. Instead, counsel for Plaintiff stated only that they intended to file the Amended Complaint before the Defendants' responses were due and that the defense should defer preparation of motions to dismiss (for which considerable work had already been done) until the Amended Complaint was filed.

34.     Counsel for Defendants appeared on July 7, 2010.  Accordingly, pursuant to Local Rule 26(f), the present deadline for the parties to confer regarding case management issues is August 6, 2010.

35.     In light of the present uncertainty concerning Plaintiff's allegations and especially so concerning the individual Defendants, including whether Plaintiff intends to pursue claims against the individual Defendants, it is premature to meet and confer regarding case management issues.

36.     Accordingly, due to the plan of the Plaintiff to amend the Complaint at some indefinite point prior to August 11, 2010, the currently established conference date for case management should be vacated.  Defendants propose to meet and confer within 30 days after the Amended Complaint is filed and for the parties to file their joint case management report pursuant to Rule 26(f) within 10 days thereafter.

37.     This is Defendants' first request for an extension of this deadline.

38.     The undersigned counsel has conferred with counsel for Plaintiff who advises that Plaintiff opposes the granting of this motion.

WHEREFORE, Defendants respectfully request an extension of time of up to 30 days after Plaintiff files her proposed amended complaint to confer for purposes of Local Rule 26(f).

Respectfully submitted,

/s/ Jerry S. McDevitt, Esquire
Jerry S. McDevitt (ct11783)
Curtis B. Krasik (ct20427)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-8608

- 9 -

                                                Jonathan B. Tropp (ct11295)  
                                                DAY PITNEY LLP  
                                                One Canterbury Green  
                                                Stamford, CT 06901  
                                                (203) 977-7300  

                                                *Attorneys for Defendants*  
                                                *World Wrestling Entertainment, Inc.,*  
Dated:  July 30, 2010                        *Vince McMahon and Linda McMahon*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of July, 2010, the foregoing **DEFENDANTS' MOTION TO EXTEND 26(f) CONFERENCE DEADLINE** was served on the following counsel through the Court's CM/ECF System:

Gregg Rubenstein
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131

/s/ Jerry S. McDevitt, Esquire
Jerry S. McDevitt