**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARTHA HART,<br>        Plaintiff, | No. 3:10cv0975 (SRU) |
|         v. | |
| WORLD WRESTLING ENTM'T, INC., et<br>al.,<br>        Defendants. | |

**ORDER ON MOTIONS TO DISMISS**

This claim arises from a former business relationship between the plaintiff's deceased husband and one of the defendants. The defendants are World Wrestling Entertainment ("WWE") and its CEOs, Vince and Linda McMahon ("Vince" and "Linda," or collectively "the McMahons"). The plaintiff is Martha Hart ("Martha"), wife of Owen Hart ("Owen"). Owen was a wrestler affiliated with WWE. In 1996 Owen and WWE entered into a contract that governed WWE's right to use Owen's image, and Owen's right to receive profits from WWE's use of his image. Martha, on behalf of herself and the Estate of Owen Hart ("the Estate"), has filed suit against the defendants alleging breach of contract, unjust enrichment, false association, invasion of privacy, accounting, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), violation of the right of publicity, and negligent supervision. WWE and the McMahons have both filed motions to dismiss the plaintiff's first amended complaint. Docs. ## 34, 36. The defendants have also filed a motion to strike certain allegations in the first amended complaint. Doc. # 32. For the reasons that follow, the McMahons' motion to dismiss is **granted**, and WWE's motion to dismiss is **granted in part and denied in part**. The motion to strike is **granted**.

**I. Background**

On July 1, 1996, Owen signed a Booking Agreement with Titan Sports, Inc., the predecessor to WWE ("Booking Agreement").  Amend. Compl. at ¶ 12.  That agreement is at the heart of the breach of contract claims.

The Booking Agreement distinguished between two kinds of intellectual property.  The first was "Original Intellectual Property;" those rights were assigned to Titan/WWE, but were to revert to Owen upon termination of the agreement.  *Id.* at ¶¶ 14-15.  The Booking Agreement states in section 3.1 that:

> [A]ll service marks, trademarks and any and all other distinctive and identifying indicia under which WRESTLER claims any rights, including but not limited to his/her legal name, his/her ring name, likeness, personality, character, caricatures, voice, signature, costumes, props, gimmicks, gestures, routines and themes, which are owned by WRESTLER or in which WRESTLER has any rights anywhere in the world (collectively, the "Original Intellectual Property") are described in Schedule A hereto.

*Id.*, Ex. A at 4.  Schedule A of the Booking Agreement, which is entitled "Original Intellectual Property," is blank.  *Id.* at 21.

The second category of intellectual property was "New Intellectual Property," which was defined as:

> With the exception of the Original Intellectual Property, service marks, trademarks and/or distinctive and identifying indicia, including ring name, likeness, personality, character, caricatures, voice, signature, costumes, props, gimmicks, gestures, routines, themes, used by or associated with WRESTLER's performance in the business of professional wrestling or sports entertainment during the term of this Agreement.

*Id.* at ¶ 16.  Those rights were assigned to Titan/WWE in perpetuity, notwithstanding any termination of the Booking Agreement.  *Id.*

Owen was to receive 25% of net receipts from licensed commercial products utilizing Owen's Original and/or New Intellectual Property, or his pro rata share of 25% of the proceeds of such licensed products, when used in conjunction with other talent ("licensed product

- 2 -

royalties"). *Id*. at ¶ 18.  He was also to receive 5%[1] of the net receipts from the direct sale of

commercial products utilizing Owen's Original and/or New Intellectual Property or his pro rata

share of 25% of sale proceeds when Owen's Original and/or New Intellectual Property was used

in conjunction with other talent ("direct sales royalties").  *Id*. at ¶ 19.  Finally, Owen was to

receive 25% of the net receipts from video products utilizing Owen's Original and/or New

Intellectual Property or his pro rata share of 25% of such proceeds when Owen's Original and/or

New Intellectual Property was used in conjunction with other talent ("video royalties").  *Id*. at ¶

20.

     According to the plaintiff, Owen and Titan/WWE agreed that the Booking Agreement

would terminate upon Owen's death, but that Titan/WWE's royalty payment obligations did not

end.  *Id*. at ¶ 21.  On May 23, 1999, Owen was killed while performing a wrestling stunt during a

WWE event.  The plaintiff alleges that royalties are due and owing to the Estate.  *Id.* at ¶ 101.

     After Owen's death, Martha started the Owen Hart Foundation ("the Foundation"), which

is devoted to charitable causes, including scholarships and housing.  *Id*. at ¶ 27.  Martha believes

that the Foundation is the "antithesis" of the work done by the defendants, and has sought to

distance the Foundation from the defendants.  *Id*. at ¶¶ 27, 30-31.  The Foundation is not a

plaintiff in this case.

     The plaintiff's complaint centers on WWE's production and sale of a video called *Hart &*

*Soul: The Hart Family Anthology*.  *Id*. at ¶ 34.  The video purports to chronicle the history of the

Hart family of wrestlers, including Owen, his parents, and siblings.  *Id*. at ¶ 35.  It uses Owen's

legal name, and contains several family photos of him.  *Id*. at ¶¶ 38-40.  The plaintiff claims that

---

[1] This figure appears to be a typographical error, but the contract does say 5% rather than 25%.

the defendants have used Owen's name and likeness to associate him with WWE, which has tarnished the reputation of the Foundation. *Id*. at ¶ 44. Martha also alleges that WWE, under the direction of the McMahons, has made other commercial uses of Owen's name and likeness, including multiple DVDs, television programs, the WWE website, and online subscription service through WWE.com and the WWE Encyclopedia. *Id*. at ¶¶ 48-49.

Before bringing this case, the plaintiff filed a motion for an interim injunction in Canadian court. *See* Mot. to Dismiss, Ex. 4. The injunction sought to bar release of the *Hart & Soul* video. The Canadian court denied the injunction and stayed the case, stating that future proceedings should occur in Connecticut courts.

## II. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "factual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also*

- 4 -

*Iqbal*, 129 S.Ct. at 1940 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## III.  Discussion

### A.  Contract Claims[2]

#### 1.   *Breach of Contract – Unauthorized Use of Original Intellectual Property*

Martha alleges that WWE breached its contract with the decedent through its unauthorized use of Original Intellectual Property.  As noted above, Schedule A, the section of the contract that was supposed to list all Original Intellectual Property, is blank.  Under the contract, all intellectual property that is not listed as Original Intellectual Property is classified as New Intellectual Property.

The defendants argue that the absence of any intellectual property listed in Schedule A means there is no Original Intellectual Property.  Martha responds that Schedule A is blank because Owen retained his right to any Original Intellectual Property, and never bestowed it on the defendants in the first place.  Plaintiff's argument goes against the plain language of the Booking Agreement.  Section 3.2 of the Booking Agreement clearly states that:

---

[2] All parties agree that, under the Booking Agreement's choice-of-law clause, all contract claims should be interpreted in accordance with Connecticut law.

> <u>With the exception of the Original Intellectual Property</u>, <u>any</u> service marks, trademarks and/or distinctive and identifying indicia, <u>including ring names</u>, likeness, personality, character, caricatures, voice, signature, costumes, props, gimmicks, gestures, routines, themes, used by or associated with WRESTLER's performance in the business of professional wrestling or sports entertainment during the term of this Agreement (collectively the "New Intellectual Property") <u>are hereby assigned to and shall belong to PROMOTER in perpetuity</u> with PROMOTER retaining all such ownership rights exclusively throughout the world notwithstanding any termination of this Agreement.

Amend. Compl., Ex. A at 4 (emphasis added).  By failing to designate any intellectual property as "Original Intellectual Property," the decedent transferred all intellectual property that could be classified as New Intellectual Property to the defendants.

Martha argues that legal names are included in the list of intellectual property that could *possibly* be designated as "Original Intellectual Property," but not in the list of intellectual property that could be designated "New Intellectual Property."  Although that is true, it is irrelevant.  Nowhere in the Booking Agreement does it state that Owen has exclusive rights to his legal name, or that WWE will refrain from using his legal name.

Moreover, New Intellectual Property is explicitly defined to include ring names.  In its motion to dismiss, WWE asserts that "[f]or most of his career, Owen's ring name was his real name."  WWE's Mot. to Dismiss at 7 n.6.  Martha's complaint fails to allege that "Owen Hart" was not Owen's ring name.  Absent that allegation, the complaint fails to plead a plausible claim that WWE breached its contract with Owen by using the name "Owen Hart."  Thus, the motion to dismiss count three, unauthorized use of intellectual property, is granted.

### 2. *Breach of Booking Agreement – Failure to Pay Royalties*

Martha also alleges that the defendants breached the Booking Agreement by failing to pay royalties they owed.  Under sections 7.2 and 7.3 of the Booking Agreement, Owen – and now his Estate – is entitled to licensed product royalties from commercial products using Owen's

- 6 -

Original and/or New Intellectual Property.  Under sections 7.5 and 7.6 of the agreement, the

Estate may be entitled to direct sales royalties from direct sale commercial products using

Owen's Original and/or New Intellectual Property.  Finally, in section 7.8 of the agreement, the

Estate is entitled to video royalties from video products in which Owen appears.  The complaint

alleges that Owen's New Intellectual Property has been used and no royalties have been paid,

thereby stating a claim for breach of contract.

WWE argues that Martha is barred from bringing her contract claim because of a 2000

release signed by the defendants and the plaintiff.  WWE's Mot. to Dismiss at 11.  That release

bars "all claims . . . from the beginning of time to the date of this Agreement, that the Releasing

Parties had or may now have against any of them, as may have arisen or has arisen in connection

with all matters arising out of or relating to the death of Owen Hart."  *Id*. at 12.  According to

WWE, because Martha states that the defendants' right to use Owen's Original Intellectual

Property terminated with his death, any claims involving that agreement are a claim "arising out

of or relating to the death of Owen Hart."  *Id*.  No Original Intellectual Property was listed in the

Booking Agreement, however, and thus any royalty claims must be based on use of New

Intellectual Property.  The obligation to pay royalties for use of New Intellectual Property is not

affected by Owen's death, and WWE's argument is therefore unpersuasive.

WWE's final argument is that the breach of contract claim must be dismissed because it

was raised outside the statute of limitations.  The Connecticut statute of limitations for contract

claims is six years.  Conn. Gen. Stat. § 52-576.  The defendants argue that the contract was

allegedly first breached in 1999, and as such, any breach of contract claim is outside the statute

of limitations.

The defendants are incorrect.  Martha's complaint states that the Booking Agreement was repeatedly breached within the last six years.  Every time a DVD sale was made and the plaintiff did not receive royalties, the Booking Agreement may have been breached.  Because "[a] cause of action accrues when the breach occurs," Conn. Gen. Stat. § 42a-2-724(2), at least some of Martha's contract claims fall within the statute of limitations.  Therefore, the motion to dismiss count five is denied.

    3.  *Unjust Enrichment*[3]

A claim for unjust enrichment exists where "justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract."  *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282 (Conn. 1994); *see also Alstom Power, Inc. v. Schwing America, Inc.*, No.3:04cv1311, 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) (claim for unjust enrichment allows plaintiff to "recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties") (internal citations and quotations omitted).

WWE claims that Martha's unjust enrichment claim must fail because it is based only on its alleged breach of contract, and thus breach of contract, not unjust enrichment, is the appropriate cause of action.  WWE's Mot. to Dismiss at 38.  Martha does not dispute that an unjust enrichment claim cannot be based on a breach of contract.  Instead, Martha argues that her unjust enrichment claim is based on WWE's use of Owen's legal name.  Opp'n to WWE's Mot. to Dismiss at 38.  According to Martha, Owen's legal name was either was not included as "Original Intellectual Property," or <u>was</u> included and WWE's right to it expired on May 23, 1999.

_____

[3] The parties agree that I should apply Connecticut law to resolve the unjust enrichment claim.

Again, this claim must fail as implausible because Martha has failed to allege that Owen's legal name was not also his ring name.  If Owen's legal name was also his ring name, then WWE had a contractual right to use it, and there can be no claim for unjust enrichment. Accordingly, WWE's motion to dismiss the unjust enrichment claim is granted.

B. <u>Privacy Tort Claims</u>

Martha alleges that the defendants impermissibly have used Owen Hart's name and likeness beyond the rights that were granted to them for New Intellectual Property in the Booking Agreement, and that in doing so, the defendants have invaded Owen's privacy and violated his right of publicity.  Amend. Compl. at ¶¶ 70-74.

Although Martha classifies "invasion of privacy" and "violation of the right of publicity" as two separate torts, "invasion of privacy" is actually a category of tort.  "'The four categories of invasion of privacy are set forth in 3 Restatement (Second), Torts § 652A as follows: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of another's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public.'"  *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 455 (D. Conn. 2009) (quoting *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 128 (1982)).

Martha's invasion of privacy claim appears to be a claim for unreasonable publicity. That claim provides a cause of action against "[o]ne who gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."  Rest. 2d Torts § 652D.

- 9 -

Martha's claim for "right to publicity" appears to be a claim for "appropriation of the other's name or likeness."  That claim provides a cause of action against "[o]ne who appropriates to his own use or benefit the name or likeness of another."  Rest. 2d Torts § 652C.

The parties disagree about what jurisdiction's law should govern the invasion of privacy/unreasonable publicity and right to publicity/appropriation of likeness claims.  Martha maintains that Canadian law governs her privacy claims, and WWE insists that Connecticut law governs those claims.  The bulk of WWE's argument centers on the text of the Booking Agreement.  WWE argues that, because the Booking Agreement had a forum-selection clause mandating litigation in Connecticut, Connecticut law should govern all claims.  The Booking Agreement has two relevant clauses:  one a jurisdictional clause, and one a choice-of-law clause. The jurisdictional clause states that,

> In the event that there is any claim, dispute, or other matter in question arising out of or relating to this Agreement, the enforcement of any provisions therein, or breach of any provisions thereof, it shall be submitted to the Federal, state or local courts, as appropriate, in the State of Connecticut.

Amend. Compl. Ex. A at section 13.8.  The choice-of-law clause states that "[t]his Agreement is made in Connecticut and shall be governed by and interpreted in accordance with the laws of the State of Connecticut, exclusive of its provisions relating to conflicts of law."  *Id*. at section 13.7. The defendants reason that "[t]he operative contract governing WWE's rights to publicize Owen Hart provide that it 'is made in Connecticut and should be governed by and interpreted in accordance with the laws of the State of Connecticut.'"  WWE's Mot. to Dismiss at 22.

Although the jurisdictional forum-selection clause is quite broad, the choice-of-law clause is relatively narrow.  The tort claims do not involve interpretation of the Booking

Agreement,[4] and the choice-of-law clause does not apply here.  Thus, I must look to Connecticut's choice-of-law provisions in order to determine the operative law.  *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (holding that a "federal court sitting in diversity applies the choice of law rules of the forum state").

The first step in a Connecticut choice-of-law analysis is to determine whether there is an outcome-determinative discrepancy between Connecticut law and the foreign law.  If there is no outcome-determinative discrepancy, the Court will apply the law of the forum state.  *O'Connor v. Norman*, No. 3:08cv1773, 2011 WL 2198311, at *6 (D. Conn. June 6, 2011) (holding that because the parties had not identified any possible outcome-determinative discrepancies, the Court would apply Connecticut contract law).  Martha puts forth two conflicts between Connecticut and Canadian privacy law: (1) that WWE's copyright defense will not be available under Canadian law, and (2) that Canadian law is more protective of privacy than Connecticut law.

The first alleged conflict is a nonstarter.  WWE's copyright defense maintained that WWE had a copyright in Owen's "appearance, performance, commentary, and any other work product for any or all of the Events."  Martha, as discussed in depth below, has only stated a potentially valid claim for right to publicity/appropriation of likeness with respect to the defendants' use of Owen's personal photos.  Because the defendants admittedly do not own the copyright to those photos, the copyright defense is inapplicable, and not an "outcome-determinative discrepancy."

---

[4] To the extent that WWE argues that the tort claims are preempted by the contract, the terms of the contract will be construed using Connecticut rules of interpretation.

Martha's second argument is that Canadian law, specifically the law of Alberta Province, is more protective of privacy, while Connecticut law is more protective of freedom of expression. The plaintiff cites no cases indicating that is true with respect to privacy torts.[5] Thus, the plaintiff has failed to demonstrate an outcome-determinative discrepancy between Canadian and Connecticut law. In any case, the choice-of-law issue is immaterial, because the result would be the same under either jurisdiction's law.

Martha lists three specific instances in which the defendants used Owen's name and likeness in connection to the *Hart & Soul* DVD: (1) the use of Owen's legal name, (2) the wrestling photos of Owen, and (3) family photos of Owen.

### 1. *Legal Name and Wrestling Photos*

It is undisputed that the *Hart & Soul* video uses the name "Owen Hart" on its packaging and in the video's contents. What is unclear is whether "Owen Hart" was also Owen's ring name, as WWE has asserted. That dispute has significance because under the Booking Agreement WWE retains the rights to:

> identifying indicia, including <u>ring name</u>, likeness, personality, character, caricatures, voice, signature, costumes, props, gimmicks, gestures, routines, [and] themes, used by or associated with WRESTLER'S performance in the business of professional wrestling or sports entertainment during the term of this Agreement.

Amend. Compl., Ex. A at 4 (emphasis added). Martha does not dispute that Owen occasionally wrestled under "Owen Hart," and does not allege that "Owen Hart" was <u>not</u> his ring name. If

---

[5] For the proposition that Canadian law is more protective of privacy than U.S. law, the plaintiffs cite *Grant v. Torstar Corp.*, [2009] 3 S.C.R. 640 (libel claim); *Canada (Attorney General) v. JTI-MacDonald Corp.*, [2007] 2 S.C.R. 610 (constitutionality of statute restricting advertising); *Hill v. Church of Scientology of Toronto*, [1995] 2 S.C.R. 1130 (libel claim); *R. v. Keegstra*, [1990] 3 S.C.R. 697 (constitutionality of criminal statute). Martha later cites to other, more relevant, cases, but not cases that illuminate a difference between Connecticut and Alberta law (indeed, many of the cases are from provinces other than Alberta).

"Owen Hart" was Owen's ring name, then as a matter of law WWE had the right to use that
name.  Thus, the motion to dismiss the invasion of privacy/unreasonable publicity and right of
publicity/appropriation of likeness claims concerning use of Owen's name is granted.

Similarly, the Booking Agreement clearly grants WWE rights to Owen's likeness that are
associated with his professional wrestling performances during the term of the Booking
Agreement.  Thus, the motion to dismiss the invasion of privacy and right of publicity claims
regarding any wrestling photos is granted.

2.  *Family Photos*

Martha's final invasion of privacy/unreasonable publicity and right of
publicity/appropriation of likeness claims involve the defendants' use of personal photographs of
Owen.

a.  *Invasion of Privacy/Unreasonable Publicity*

As noted above, Martha's invasion of privacy claim is a claim for unreasonable publicity.
In order to succeed on that claim, Martha must have pled facts indicating that the matter
publicized "is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not
of legitimate concern to the public."  3 Restatement (Second), Torts § 652D.  Martha's claim
must fail, because publication of the family photographs at issue here is not the kind of
publication that would be highly offensive to a reasonable person.  *See Beckner v. Connecticut
Community for Addiction Recovery, Inc.*, No. CV095005324S, 2010 WL 4226736, at *3 (Conn.
Super. 2010) (disclosure that an individual has psoriasis would not constitute unreasonable
publicity); *Gleason v. Smolinski*, No. NNHCV065005107S, 2009 WL 2506607, at * (Conn.
Super. 2009) (not unreasonable publicity for newspaper to publish details of plaintiff's life,
including her children's suicide, drug overdose, and incarceration, or to publish pictures of her).

- 13 -

Accordingly, the motion to dismiss Martha's claim of invasion of privacy/unreasonable publicity is granted.

> b.  *Right of Publicity/Appropriation of Likeness*
>
>> i.  *WWE*

As noted above, Martha's "right of publicity" claim is a claim for "appropriation of the other's name or likeness."  WWE argues that the right of publicity/appropriation of likeness claim cannot be brought under Connecticut law because the use of someone's likeness is only actionable "'when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness that the right of publicity is invaded.'"  WWE's Mot. to Dismiss at 25 (citing *Restatement (Second) of Torts*, § 652C, comment d).  WWE argues that *Hart & Soul* is a piece of art or entertainment, but that is not clear, as a matter of law.  The DVD could also be viewed as a feature-length commercial for WWE programming, and thus the right of publicity/appropriation of likeness claim survives under Connecticut law.

Similarly, WWE argues that, under Canadian publicity law, the plaintiff must demonstrate that the defendant used his image in an endorsement-type situation.  WWE argues that, under Canadian jurisprudence, the right of publicity has "<u>not</u> been successfully invoked when used to question thoughts, ideas, newsworthy events or matters of <u>public interest</u>." WWE's Response to Pl.'s Supp. Brief Concerning Choice of Law at 21.  But again, it is not clear here that *Hart & Soul* was a matter of public interest, as opposed to a commercial or endorsement.

WWE also argues that Owen consented to the use of his image, and therefore a right of publicity claim must fail under either Canadian or Connecticut law.  *Id.* at 15-19.  It is true that

- 14 -

Owen consented to the use of his wrestling persona, but nothing suggests that Owen consented to the use of personal family photos.  Any arguments based on consent must fail at this stage.  Thus, WWE's motion to dismiss the right of publicity/appropriation of likeness claim related to the use of Owen's family photos is denied.

ii.   *Vince and Linda McMahon*

Martha alleges that Vince and Linda McMahon are liable for any invasion of privacy committed by WWE.  In Connecticut, corporate officers can be found liable if they personally committed the tort in question or ordered the tort done, even if the tort was committed by the officer's corporation.[6]  *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 132 (2010).

Martha alleges that Linda McMahon personally participated in the decision to release *Hart & Soul*.  Amend. Compl. at ¶¶ 57-58, 117-22.  But Martha has failed to allege that Linda had knowledge that *Hart & Soul* contained Owen's personal photo.  Therefore, Linda may not be held liable for the invasion of privacy and right of publicity torts, and her motion to dismiss those claims is granted.

Martha has not alleged that Vince was involved with the production or sale of *Hart & Soul*.  Thus, Vince's motion to dismiss the privacy tort claims is granted.

---

[6] The parties did not brief the issue of vicarious liability for corporate officers under Canadian law.  Thus, at this stage the Court will assume that Canadian courts would treat the matter the same as Connecticut courts.  *See Philips v. Audio Active Ltd*., 494 F.3d 378, 386 (2d Cir. 2007) (noting that where parties had not briefed foreign law, the court "will assume from the parties' briefing that they do not rely on any distinctive features of [foreign] law and apply general . . . law principles and federal precedent"); *O'Connor*, 2011 WL at *6 ("Because neither party has identified any other possible outcome-determinative discrepancies [between] Connecticut [and foreign] law, the Court will apply the . . . law principles of Connecticut, the forum state, in order to resolve this case.").

C.  Negligent Supervision[7]

Martha alleges that Vince and Linda McMahon were responsible for supervising the actions of WWE's marketing personnel, and that their failure to do so led to the unlawful use of Owen's name and his family photos in WWE merchandise.  Amend. Compl. at ¶¶ 124-28.

"To prove a claim of negligent supervision under Connecticut law, a plaintiff must plead and prove that he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise.  A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Burford v. McDonald's Corp.*, 321 F. Supp. 2d 358, 366 (D. Conn. 2004).

Martha's negligent supervision claim against Linda is rooted in the fact that Linda was personally involved in the decision to publish *Hart & Soul*.  Amend. Compl. at ¶¶ 57-58.  Martha has not alleged, however, that Linda was aware of the contents of *Hart & Soul*.  The only potentially wrongful materials in the DVDs were the personal photos of Owen Hart,[8] and those pictures constitute a very small percentage of the DVD.  I cannot assume that Linda knew *Hart & Soul* contained those pictures, and thus I cannot assume that Linda knew or reasonably should have known about any tortious conduct.  As a result, Linda's motion to dismiss the negligent supervision claim is granted.

_____

[7] The parties stipulate that Connecticut law governs the negligent supervision claim.

[8] Although Martha asserts that the use of Owen's legal name was also wrongful, Martha, as noted above, has failed to allege that Owen's legal name was not also his ring name.  The use of Owen's ring name was not wrongful, and thus Martha has failed to allege facts from which a jury could find that the use of Owen's legal name was wrongful.

Martha has alleged even fewer facts indicating that Vince knew or should have known about his employees' tortious conduct.  Instead, she only alleges that he had the right to control production of *Hart & Soul* "by virtue of his executive position at and ownership interest in WWE."  *Id*. at ¶ 92.  Indeed, Martha's opposition to the McMahons' motion to dismiss does not even address the motion to dismiss the negligent supervision claim against Vince.  Therefore, Vince's motion to dismiss the claim of negligent supervision against him is granted.

    D.  Violations of the Lanham Act

Martha alleges that the Estate retains sole legal right over the name and likeness of Owen, exclusive of New Intellectual Property, and that the defendants have impermissibly appropriated Owen's name, likeness, and other Original Intellectual Property in their videos and packaging.  Amend. Compl. at ¶¶ 61-62, 65.  According to Martha, the defendants' unauthorized use of Owen's name and likeness falsely suggests that the Estate and/or the Foundation have endorsed the defendants, and is likely to cause confusion as to the association of the defendants with the Estate and/or Foundation, in violation of the Lanham Act, 15 U.S.C. § 1125.[9]  *Id*. at ¶¶ 66-69. Martha focuses in particular on (1) Owen's legal name, (2) wrestling photos of Owen, and (3) childhood and other family photos of Owen.

---

[9] The Lanham Act provides that:

> Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, . . . name, . . . or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

As noted above, WWE has the contractual right to use the name "Owen Hart" if that was Owen's ring name. The motion to dismiss the Lanham Act claim involving use of Owen's name, therefore, is granted. Similarly, because the Booking Agreement grants WWE rights to use Owen's likeness if that likeness is associated with his wrestling performances, the motion to dismiss the Lanham Act claim regarding any wrestling photos is granted.

Martha also argues that the defendants violated the Lanham Act by using childhood pictures of Owen, and other photos taken before his relationship with WWE began. For an unregistered trademark, such as these photographs, to be protected under Section 43(a) of the Lanham Act, it "must either be inherently distinctive, i.e., intrinsically capable of identifying its source, or have acquired secondary meaning." *Brooks ex rel. Estate of Bell v. Topps Co.*, No. 6cv2359, 2007 WL 4547585, at *6 (S.D.N.Y. Dec. 21, 2007) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006)) (internal punctuation omitted). "Personal names and photographs are not inherently distinctive, and therefore are 'protected only if, through usage, they have acquired distinctiveness and secondary meaning.'" *Id.* (quoting *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990)).

"'Secondary meaning' is a term of art referencing a trademark's ability to 'identify the source of the product rather than the product itself.'" *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 167 (2d Cir. 2007) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992)). In this case, Martha has failed to allege that the photographs used have acquired a secondary meaning that identifies them with the Estate. Because this is a necessary element for a

false endorsement claim under the Lanham Act,[10] the defendants' motion to dismiss the Lanham Act claim is granted.

E.  Copyright Infringement

Martha alleges that she owns a copyright to two holiday cards that appeared in *Hart & Soul*, and as such, WWE and Vince McMahon have violated copyright law.  Amend. Compl. at ¶¶ 81-94.  At oral argument, Martha admitted that she did not own the copyrights when she commenced this action.  Martha contends that she is still entitled to sue, however, because her ownership of the copyrights is "by way of an assignment that specifically transfers to her, among other things, the previous owner's right to sue for past, present and future infringements."  Opp'n to WWE's Mot. to Dismiss at 37.   "Where the assignment of an exclusive right under a copyright expressly includes the right to prosecute accrued claims for infringement, that right passes to the assignee."  *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846, 1999 WL 264927, at *1 (2d Cir. 1999).

Martha did not allege in her complaint that it was the former copyright owner whose copyright had been infringed, or that the former copyright owner had assigned to her the right to prosecute claims for infringement.  Without that allegation, Martha cannot bring claims based on

---

[10] *But see Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002).  In *Chambers*, the Second Circuit held that the district court had erred in dismissing a Lanham Act claim where the plaintiff-singers alleged the use of their names and likenesses on a website might lead consumers to believe that they were affiliated with that website.  The Second Circuit's decision contained no discussion of secondary meaning, and instead remanded the case, stating that the district court had erred in failing to consider all conduct raised by plaintiffs' allegations.  *Id*. at 155.  The Court also emphasized the liberal pleading standard of the day:  "it is not beyond doubt that plaintiffs can prove no set of facts which would entitled them to relief."  *Id.* (internal citations and punctuation omitted).  The Supreme Court has since imposed a stricter pleading standard on plaintiffs. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937.

a violation of rights of the original owner. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them."). Thus, the motion to dismiss is granted.

F. Accounting Claim

Martha acknowledges that the accounting claim is not a separate cause of action, but is instead an attempt to obtain discovery on potential damages. Therefore, the parties agree that the accounting claim should be dismissed without prejudice to their seeking discovery.

G. CUTPA

Finally, Martha brings a claim for violation of CUTPA.[11] A CUTPA violation must involve "unfair methods of competition" or "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.

Connecticut courts look to the "cigarette rule" to determine whether a practice is unfair under CUTPA:

> (1) Whether the practices, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businesspersons. . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

---

[11] Even though CUTPA is a Connecticut statute, a CUTPA violation may occur outside of Connecticut when the violation is tied to trade or commerce intimately associated with Connecticut, or when Connecticut choice-of-law principles apply and such principles mandate application of Connecticut law. *Reiling Assoc. v. Fisher-Price, Inc.,* 406 F. Supp. 2d 200 (D. Conn. 2005). All parties agree that Connecticut law governs here.

*Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 43 (1998) (internal citations and punctuation omitted).

Martha first argues that her CUTPA claim against the defendants survives, because a violation of the Lanham Act is a *per se* CUTPA violation.  As noted above, however, the motion to dismiss Martha's Lanham Act claim has been granted.  The only remaining claims against the defendants are a claim for breach of contract for the failure to pay royalties, and claim for appropriation of likeness.

In order to plead a prima facie violation of CUTPA, generally there needs to be more than merely a breach of contract. *Gabriele v. Sanzaro*, No. 3:10cv38, 2010 WL 2860730, at *3 (D. Conn. July 19, 2010).  Specifically, Connecticut courts have held that there must be some "[s]ignificant aggravating circumstances."  *Empower Health LLC v. Providence Health Solutions LLC*, No. 3:10cv1163, 2011 WL 2194071, at *7 (D. Conn. June 3, 2011) (internal quotation marks omitted).  Martha suggests in her opposition brief that the aggravating factors are the fact that the defendants "unscrupulously profit[ed] from the legal name of a wrestler that the defendants agreed not to use, and then systematically hid[] any proceeds from such profits from the decedent's widow."  Pl.'s Opp'n to WWE's Mot. to Dismiss at 31.  But as previously noted, Martha has failed to allege that the defendants had agreed not to use Owen's legal name.  There are also no allegations in the complaint that the defendants actively hid any proceeds from Martha; the allegations only state that Martha did not know about them.

Because Martha has failed to allege that the defendants acted with bad faith, or that there were significant aggravating circumstances to their behavior, the motion to dismiss the CUTPA claim is granted.

H. <u>Motion to Strike</u>

- 21 -

The defendants have filed a Rule 12(f) motion to strike certain allegations against them involving Owen's death.  Doc. 32.  Specifically, they seek to strike the claims that (1) WWE insisted and required Owen to perform the stunt that resulted in his death despite knowing he disapproved of it; (2) the defendants have engaged in blatantly disrespectful acts in regard to Owen since his death; (3) the defendants had a role in causing Owen's death; and (4) by countersuing Martha, the defendants tried to intimidate her in the wrongful death suit in the same way they rule their wrestlers with intimidation and high pressure.  Those allegations are both unnecessary and inflammatory, and the motion to strike is granted.

## IV.  Conclusion

For the reasons stated above, the defendants' motions to dismiss are **granted in part and denied in part**.  The motions to dismiss the following claims are **granted**: the breach of contract claim regarding the unauthorized use of Original Intellectual Property, the negligent supervision claim, the invasion of privacy/unreasonable publicity claim against all defendants, the right of publicity/appropriation of likeness claims regarding the use of Owen's wrestling photos against all defendants, the right of publicity/appropriation of likeness claim regarding the use of Owen's name against WWE, all right of publicity/appropriation of likeness claims against Vince and Linda McMahon, the Lanham Act claim, the copyright infringement claim, the unjust enrichment claim, and the CUTPA claim.  The accounting claim is **dismissed** without prejudice to the plaintiff seeking appropriate discovery.

The motions to dismiss the following claims are **denied**: the breach of contract claim regarding failure to pay royalties, and the right to publicity/appropriation of likeness claim regarding the use of personal photos against WWE.

The defendants' motion to strike certain allegations in the first amended complaint is granted.  The plaintiff shall file a second amended complaint consistent with this decision within thirty days.

It is so ordered.

Dated at Bridgeport, Connecticut this 28th day of March 2012.


/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge