UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARTHA HART, in her personal capacity and as personal representative of THE ESTATE OF OWEN JAMES HART, ) ) ) ) | |
| Plaintiff,    ) ) | C.A. No. 3:10-cv-975-SRU |
| v.    ) ) | |
| WORLD WRESTLING ENTERTAINMENT, INC. ) VINCE McMAHON and LINDA McMAHON,   ) ) | |
| Defendants.    ) | SEPTEMBER 17, 2012 |

**DEFENDANTS' REPLY TO COUNSEL'S
OPPOSITION TO MOTION FOR SANCTIONS**

The Defendants, World Wrestling Entertainment, Inc. ("WWE"), Vince McMahon and Linda McMahon, respectfully submit this Reply to Counsel's Opposition to Defendants' Motion for Sanctions Under 28 U.S.C. § 1927.

### I.    INTRODUCTION

Unable to dispute the objective bases for Defendants' Motion for Sanctions or the governing legal standard under 28 U.S.C. § 1927, Counsel's only response is to vouch for his own good faith.[1]  Such self-serving and subjective protestations by Counsel, however, are insufficient to avoid sanctions as a matter of Second Circuit law.  *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (objectively analyzing documentary evidence alone to infer subjective bad faith in determining that counsel made a sanctionable misrepresentation by omission); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335-36 (2d Cir. 1999)

---

[1]    WWE catalogued twelve specific examples of Mr. Rubenstein's vexatious conduct in its opening brief.  *See* Doc. 88, pp. 10-11.  In his Response, there is no denial of any of these ***objective*** acts.

(holding that counsel is not entitled to a hearing or to otherwise present testimonial evidence when defending against a sanctions motion, particularly when the motion is based on "well-known facts contained in the existing record" and otherwise argued in legal briefs).

The objective record in this case decidedly proves a continuum of vexatious behavior of Mr. Rubenstein far exceeding the bounds of zealous advocacy.  At bottom, Counsel willingly served as a vehicle and mouthpiece for Martha Hart to continue her personal vendetta against WWE and the McMahons based on the completely untenable premise that WWE contractually agreed never to use Owen Hart's legal name after his death.  Counsel presented that frivolous claim with not a shred of factual support in a complaint replete with allegations that this Court subsequently found "unnecessary and inflammatory."  Doc. 76, p. 22.  Knowing full well that Mrs. McMahon was a candidate for U.S. Senate and that any scandalous lawsuit filed against her would generate intense media attention, Mr. Rubenstein carefully orchestrated a public-relations campaign involving:  (i) the retention of the public-relations firm, Hill & Knowlton; (ii) creation of a website called www.marthahartsueswwe.com, set up five days before this lawsuit was filed; (iii) distribution of an embargoed press release announcing the filing of the lawsuit; and (iv) a press conference held on the date suit was filed that included such invective against Defendants as questioning "the moral character of Vince and Linda McMahon" and claiming that the McMahons "couldn't wait to scrape [Owen Hart's] body off the mat," and that their "dangerous exploitation of [Owen Hart led] to his death."  *See* Doc. 38-12.  This vitriolic media attack was designed to and did publicize the "unnecessary and inflammatory" allegations that this Court has now ordered be withdrawn from this case.  Doc. 76, p. 22.  It was only possible because of Counsel's willingness to file a federal lawsuit to give the media license to report on such false and scandalous allegations—a tactic made all the worse by Mr. Rubenstein's knowledge that all

matters related to the death of Owen Hart had been fully settled and released a decade ago with no such factual findings ever made in that case.

The vexatious behavior included the bogus allegation that "the Estate registered a copyright to the life story of Owen James Hart." Doc. 1, p. 9, ¶ 33. This particularly pernicious claim established that the vexatious intent of the suit was to prevent WWE from discussing the life of Owen Hart. In reality, no such copyright was ever registered—or could have been registered—to prevent others from telling Owen Hart's life story. Despite the patent invalidity of such a claim, Defendants' counsel was forced to spend significant time and money questioning Counsel on the factual and legal bona fides of the complaint and urging Counsel to revisit that allegation, as well as numerous other allegations described at length in WWE's opening brief, in light of the available evidence and governing law.

Substantively, Counsel does not and cannot dispute that the gravamen of all three complaints he has filed with this Court (the original complaint, the FAC and the SAC) is that the contract signed between Owen Hart and WWE purportedly "prohibits" WWE from using his name after his death. This absurd claim, which continues even after the Court ruled against his client pursuant to the March 28, 2012 Order, is based not on any facts, but solely on the deceptive editing of the plain language of the Booking Agreement to make it appear as if such an agreement had been made. Based on such deception, Counsel asserts that WWE and Owen *agreed* that Owen's name and likeness would constitute Original Intellectual Property ("OIP") within the meaning of the contract and that any rights to use his legal name and likeness would revert to Owen (or his Estate) upon termination of the contract.

Significantly, Counsel does not dispute his deliberate editing of the critical provision of the Booking Agreement. Incredibly, he now dismisses such deception by characterizing the

omitted language as "immaterial text." Doc. 94, p. 6.  Specifically, he justifies the deception and omission "because the Schedule [A] is not necessary to describe or identify Owen Hart's legal name which is specifically included in the definition of Old Intellectual Property." *Id.*  This is disingenuous, to say the least.  The language that Counsel admits he deliberately omitted provides that any OIP Owen was claiming under the Booking Agreement "are described on Schedule A attached hereto and made a part hereof."  Doc. 77-1, p. 4, ¶ 3.1.  Of course, Schedule A is blank, which the Court subsequently and correctly interpreted to mean that there was no OIP under the Booking Agreement.  Doc. 76, pp. 5-6.  Thus, the text that Counsel deliberately omitted most certainly was found by the Court to be material—indeed necessary—to the proper interpretation of the Booking Agreement.  In fact, the Court explicitly ruled that "Plaintiff's argument goes against the plain language of the Booking Agreement[,]" *id.* at 5—the very language Counsel elided.  The Court's own rulings, therefore, make clear that it certainly was not reasonable or good faith for Counsel to base such an extraordinary claim solely upon such material alterations of the actual plain language of the Booking Agreement.

While it was bad faith for Counsel to misleadingly quote the OIP provision of the Booking Agreement in the original complaint and FAC to fabricate such a claim, it is truly vexatious for Counsel to have done so *again* in the SAC following the Court's 3/28/12 Order.  The Court ruled that "Plaintiff's argument goes against the plain language of the Booking Agreement" and held that the Booking Agreement *nowhere* states that Owen Hart had exclusive rights to his legal name or that WWE would refrain from using it.  Doc. 76, pp. 5-6.  Despite these rulings, Counsel reasserted the exact same contrived allegations about OIP and once more deceptively edited the Booking Agreement language by deleting the critical text regarding Schedule A.  Doc. 77, p. 5, ¶ 14.

Indeed, the entire SAC—which Counsel filed still subject to the strictures of Rule 11—is the epitome of unreasonable and vexatious multiplication of litigation. Having rejected Counsel's contrived allegations regarding OIP—the only theory presented of an affirmative agreement not to use Owen Hart's legal name—the Court's 3/28/12 Order dismissed all claims by which Plaintiff attempted to restrict WWE from using Owen's legal name and dismissed the McMahons individually. In sum, eight of the ten counts in the FAC were dismissed outright and the claim related to the use of two family photos in the Hart Family Anthology video was ordered replead. The Court ordered Plaintiff to "file a second amended complaint ***consistent with [its] decision***[.]" Doc. 76, p. 23 (emphasis added). Ignoring the Court's Order, Counsel reasserted dismissed claims (i) against WWE aimed at restricting WWE's right to truthfully use Owen's name on DVDs containing his performances based on the previously-rejected OIP canard; (ii) against the McMahons as defendants because WWE used Owen's name—the very thing the Court already ruled WWE was contractually allowed to do; and (iii) continued to include unnecessary and inflammatory allegations about Owen's death and the parties' prior settled litigation, despite the Court's previous decision clearly indicating such matters were to be stricken. Defendants, therefore, again have had to incur the time and expense to draft motions to dismiss the SAC, along with supporting memoranda of law in response to the continuing vexatious conduct of Counsel.

## II.   ARGUMENT

### A.   Counsel Mischaracterizes the Court's 3/28/12 Order and the SAC

In his Opposition, Counsel tries to spin the Court's 3/28/12 Order as a simple invitation to fix a minor pleading defect. It clearly was not. As explained in detail in Defendants' Reply to Hart's Opposition to WWE and McMahons' Motions to Dismiss, the Court interpreted "the plain language of the Booking Agreement" and concluded that Owen "fail[ed] to designate any

5

intellectual property as 'Original Intellectual Property[.]'" Doc. 76, pp. 5-6.  The Court ruled that "[n]owhere in the Booking Agreement does it state that Owen has exclusive rights to his legal name, or that WWE will refrain from using his legal name." *Id.* at 6.  In reaching this conclusion, the Court flatly rejected Plaintiff's argument that "Owen Hart" constitutes OIP based on Counsel's deceptive editing of the Booking Agreement.  These rulings are the law of the case.

Despite these rulings, Counsel proceeds as if no ruling on these points had occurred.  Incredibly, in Counsel's own words, "if Owen's legal name is not Old [*sic*] Intellectual Property, then Hart's claims for wrongful use of Owen's legal name fail . . . ." Doc. 92, p. 10.  That is precisely the issue already determined by the Court, specifically that there is no OIP and hence no basis whatsoever to pursue Mrs. Hart's claims against WWE and the McMahons arising from WWE's use of Owen Hart's legal name after his death.  Seeking to avoid sanctions, Counsel now asserts that "[t]he claims at issue were re-pleaded based on the Court's specific holding that they failed due to the absence of an allegation that Owen Hart's legal name was not his 'ring name.'" Doc. 94, p. 1 (citing Doc. 76, pp. 6, 9).  The Court's conclusion was an observation, not an invitation to violate Rule 11.  Compounding the vexatious conduct, Counsel then bottoms the attempt to justify repleading dismissed claims on the specious allegation that Owen Hart was <u>not</u> Owen Hart's ring name.  This justification fails for two reasons, one which shows additional vexatious conduct.

First, regardless of whether Owen Hart's legal name was also his ring name, Plaintiff squarely admits that she can only restrict WWE's use of Owen's name if it constitutes OIP.  *Id*.  The new allegation Counsel contends he made in response to the Court's observation—that "Owen Hart" was not Owen's "ring name"—is irrelevant to the prior decision that ***there is no OIP***.  WWE made no agreement not to use Owen's legal name because, as the Court correctly

6

concluded in its 3/28/12 Order, intellectual property must be listed on Schedule A to constitute OIP and Owen "fail[ed] to designate any intellectual property as 'Original Intellectual Property[.]'"  Doc. 76, p. 6.  Whether or not "Owen Hart" was Owen's "ring name" does not change the fact that nothing was listed on Schedule A and, therefore, no intellectual property was designated as OIP under the Booking Agreement.  The "ring name" observation made by the Court bears only on the New Intellectual Property ("NIP") provisions which are express *permissions* to use such identifiers.[2]  Although the Court's decision that only NIP existed under the plain terms of the Booking Agreement is correct, the NIP provisions, however interpreted, cannot form the basis of a promise by WWE *not* to use Owen Hart's name, as Counsel once again alleges in the SAC.

Second, the new ring name allegations prove, again, the deception and frivolity employed by Counsel to continue this most harassing lawsuit.  As demonstrated in Defendants' Reply Brief in Support of the Motions to Dismiss, Counsel's reliance on Wikipedia as a good-faith basis turns to bite him.  Wikipedia itself lists Owen Hart's legal name as also being his ring name, as it consistently does for others who have used their real name when performing in the ring.

Forcing Defendants and this Court to revisit issues that are now adjudicated (and for which no motion for reconsideration was timely filed), and to deal with continued frivolity, is a needless and vexatious waste of resources that constitutes sanctionable conduct.  *See Gollomp v. Spitzer*, 568 F.3d 355, 370-72 (2d Cir. 2009) (affirming 28 U.S.C. § 1927 sanctions where, *inter alia*, counsel ignored court opinions and case law explaining fatal flaws in claims, reasserted

---

[2]     Not only did WWE make no agreement not to use Owen's legal name, but "[b]y failing to designate any intellectual property as [OIP], the decedent transferred all intellectual property that could be classified as New Intellectual Property to the defendants."  Doc. 76, p. 6.  This transfer included Owen's ring name and all other distinctive or identifying indicia associated with Owen's professional wrestling under the Booking Agreement.  *See id.*

similar claims in amended complaint without correcting deficiencies previously highlighted by court and alleged vague, prolix and irrelevant facts and legal conclusions in complaint); *Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (affirming 28 U.S.C. § 1927 sanctions on *pro se* plaintiff who, *inter alia*, attempted "to file an amended complaint that did not materially differ from one which the district court had already concluded did not state a claim"); *Wang v. Gordon*, 715 F.2d 1187, 1191 (7th Cir. 1983) (affirming sanctions where plaintiff exhibited bad faith by filing amended complaint when "nothing was added in the second amended complaint to support a cause of action" and the judge had already explained fatal defects in earlier claims that were essentially re-plead).

B.     **Counsel's Attempt to Excuse His Admitted Misconduct Is Unavailing**

Counsel blithely disregards his own admission that the first two complaints he filed with the Court in this matter contained false allegations and/or unsupportable legal claims that ultimately were withdrawn—but only after being extensively publicized pursuant to a media plan devised by Counsel and only ***after*** Defendants' expenditure of significant time and resources questioning the bona fides of such allegations.  Arrogantly, the Court is told, "[l]ike it or not," public figures hold press conferences, Doc. 94, p. 8, and withdrawal of claims and false allegations after they are made is how it works, *id.* at 6.  It may well be that public figures call press conferences, not that Mrs. Hart qualifies.  That, of course, is utterly irrelevant to the duties placed on lawyers not to engage in extrajudicial speech aimed at character attacks or which prejudice judicial proceedings.  It is entirely inappropriate to use one's law license to fan false, fabricated and incendiary allegations in a lawsuit for use in a concerted media plan developed to publicize such matters.

As to the second excuse, Rule 11 of the Federal Rules of Civil Procedure squarely prohibits the filing of allegations without adequate research or support in the first instance—

before an adversary is forced to spend time and money to bring false allegations to Counsel's attention. *See In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 33 (D. Conn. 2010) (Arterton, J.) ("Totally unsupported factual contentions are sanctionable under Rule 11(b)(3)."). Thus, Counsel cannot, under Rule 11, first make wild, unfounded allegations and only then seek to compromise with Defendants. He is expected to know, for example, what copyrights his client actually owned or registered before filing a lawsuit. *Any* factual due diligence, and *any* legal research, would have revealed the factual falsity and legal impossibility of the claim that Martha Hart owned a registered copyright in the "life story" of Owen Hart. Counsel is expected to have researched the law to avoid presenting non-existent or objectively baseless legal claims. *See Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) ("Rule 11(b)(2) establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.") (internal quotation marks omitted). Needless to say, he is also expected to avoid filing allegations or claims "'in direct contravention of this court's earlier orders.'" *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d. Cir. 1991) (citation omitted). Counsel's undisputed failure to comply with these basic requirements in this case plainly warrants sanctions, as they reflect continual sanctionable conduct from inception until now.

Counsel also does not dispute that he actively orchestrated Plaintiff's assertion of false and inflammatory invective against Defendants in and out of court since the filing of this lawsuit, including through her website and her most recent press release. *See* Doc. 87-3 (Plaintiff's April 6, 2012 Press Release claiming "that Vince and Linda McMahon control an enterprise that puts profit and exploitation ahead of decency, values and respect"). Indeed, to this day, Plaintiff's website publicizes *the original complaint*. A copy of the original complaint remains available on the website, and no mention of the withdrawn allegations, the amended complaints

or the motions to strike appears.  This is not zealous advocacy but rather a systematic effort to continually mischaracterize and improperly publicize this lawsuit.  Counsel is well aware of—and indeed controls—this website, as he has resisted discovery requests directed to the public-relations firm that maintains the website on the grounds that his communications with it are privileged because it acts at his direction, on behalf of his client, and with respect to this litigation.  *See* Ex. 1 (Plaintiff's privilege log produced in discovery, seeking to withhold numerous communications between Counsel and public-relations firm).

Even now, after the Court struck the incendiary allegations, Counsel uses pleadings to continue vitriolic *ad hominem* attacks on WWE, proclaiming that it promotes violence and it is not the "Red Cross."  Rather than conform his conduct to the ethical requirements of the law, or the Court's Orders, Counsel has used this lawsuit to join into his client's vitriol, fabrications and disregard for the norms of due process, including flouting the Court Order dismissing claims vexatiously reasserted.

### III.   CONCLUSION

For all of the foregoing reasons and the reasons set forth in Defendants' opening brief, Counsel and his firm should be sanctioned for his violations of 28 U.S.C. § 1927 and should be jointly and severally liable for Defendants' costs, expenses and attorneys' fees incurred in combating his unreasonable and vexatious conduct.  *See Enmon*, 675 F.3d 138 (affirming § 1927 sanctions against law firm).

Respectfully submitted,

/s/ Jerry S. McDevitt, Esquire
Jerry S. McDevitt (ct11783)
Curtis B. Krasik (ct20427)
K&L GATES LLP

K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-8608

Jonathan B. Tropp (ct11295)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

*Attorneys for Defendants*
*World Wrestling Entertainment, Inc.,*
*Vince McMahon and Linda McMahon*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2012, the foregoing **DEFENDANTS' REPLY TO COUNSEL'S OPPOSITION TO MOTION FOR SANCTIONS** was served on all counsel of record through the Court's CM/ECF System.

/s/ Jerry S. McDevitt, Esquire
Jerry S. McDevitt