UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARTHA HART, in her personal capacity and as personal representative of THE ESTATE OF OWEN JAMES HART, | : : : : | |
| Plaintiff, | : : | C. A. NO. 3:10-CV-975 (SRU) |
| v. | : : : | |
| WORLD WRESTLING ENTERTAINMENT, INC., VINCE MCMAHON and LINDA MCMAHON, | : : : | |
| Defendants. | : | SEPTEMBER 17, 2012 |

**DEFENDANTS' REPLY TO HART'S CONSOLIDATED OPPOSITION
TO WWE'S AND MCMAHONS' MOTIONS TO DISMISS**

Jerry S. McDevitt (ct11783)
Curtis B. Krasik (ct20427)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-8608

Jonathan B. Tropp (ct11295)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

*Attorneys for Defendants
World Wrestling Entertainment, Inc.,
Vince McMahon and Linda McMahon*

## I.     ARGUMENT

### A.     All Claims Regarding the Use of Owen's Legal Name Fail as a Matter of Law

#### 1.     All Claims Regarding the Use of Owen's Legal Name Are Foreclosed by the Court's Prior Rulings in its 3/28/12 Order

Martha Hart opens her Opposition with the fatal admission that "if Owen's legal name is not Old Intellectual Property [*sic*], then Hart's claims for wrongful use of Owen's legal name fail and all but one of the claims against the McMahons" fail as well.[1]  Doc. 92, p. 10.  Having admitted as much, Mrs. Hart inexplicably ignores the Court's specific determination in its March 28, 2012 Order ("3/28/12 Order") that Owen Hart's legal name was <u>not</u> OIP.  Interpreting "the plain language of the Booking Agreement[,]" the Court explicitly concluded that Owen "fail[ed] to designate any intellectual property as 'Original Intellectual Property.'"  Doc. 76, pp. 5-6.[2]  In reaching this conclusion, the Court flatly rejected Plaintiff's contrived argument about OIP as going "against the plain language of the Booking Agreement."  *Id.* at 5.  The Court noted that Owen Hart would have had to list his legal name on Schedule A to the Booking Agreement for his name to become OIP within the meaning of the Booking Agreement, and he had not done so.  *Id.* at 5-6.  The Court buttressed its rejection of Plaintiff's OIP argument by also noting that "[n]owhere in the Booking Agreement does it state that Owen has exclusive rights to his legal name, or that WWE will refrain from using his legal name."  *Id.* at 6.  Having rejected the only argument ever presented that WWE somehow contractually ***agreed*** not to use Owen's legal name, the Court properly dismissed all of Mrs. Hart's claims based on the use of

---

[1]     It does not appear that this use of the phrase "Old Intellectual Property" was an isolated typo in Plaintiff's Brief.  There is no such term in the Booking Agreement; it is "Original Intellectual Property" ("OIP").  Yet, throughout Plaintiff's briefing, repeated reference is made to "Old Intellectual Property."

[2]     As explained in the WWE's opening brief, the interpretation of a contract generally is a question of law that is suitable for disposition on a motion to dismiss.  Doc. 37, p. 18.  Mrs. Hart does not dispute this proposition or contend otherwise.

Owen's name.  These rulings are the law of the case and cannot be evaded by pleading contrary legal conclusions as "facts."

Instead of confining the Second Amended Complaint ("SAC") to those narrow claims that survived the Court's dismissal Order, Mrs. Hart disregards the Court's prior conclusions. She asserts that the Court dismissed her claims challenging WWE's use of Owen's legal name "because she did not specifically allege that 'Owen Hart' was not Owen's 'ring name.'" Doc. 92, p. 12.  She contends that she "has now made the allegations the court held were lacking" by asserting in the SAC (1) "Owen Hart's legal name, Owen Hart, which constitutes Original Intellectual Property[3], is distinct from Owen Hart's ring name(s), including The Blue Blazer, which constitutes New Intellectual Property," and (2) "A ring name is a pseudonym, i.e., something other than a legal name, such that Owen Hart was not Owen's 'ring name' as used in the Booking Agreement." *Id.*  Mrs. Hart argues that the mere assertion of these specious allegations is sufficient to state a claim that WWE is prohibited from using Owen Hart's name to truthfully describe his depiction in WWE's copyrighted works sold to the public, which Mrs. Hart otherwise concedes WWE has every right to do.  *Id.*[4]

---

[3]   This statement, of course, ignores the conclusion that Owen Hart's legal name was not OIP.

[4]   Mrs. Hart still has never answered WWE or this Court as to what name WWE should use to identify Owen's performances on a DVD if not the name he actually used when performing.  Instead, she states: "[t]he court should not lose sight of the fact that WWE has ample means of identifying its products.  WWE can use New Intellectual Property, including 'ring names' qualifying as New Intellectual Property, to identify Owen in the products."  Doc. 92, p. 39 n. 14.  If that is so, then WWE invites Mrs. Hart to advise the Court and WWE what name that is when Owen performed just as "Owen Hart." Despite repeated questions from the Court at oral argument, Mrs. Hart has never identified what WWE is to call Owen when he performed as "Owen Hart."  In one of the more bizarre examples of the speech restriction sought here, Mrs. Hart's counsel suggested at oral argument that WWE is free to "still suggest that Owen Hart might be featured . . . but don't use Owen Hart's name." Doc. 66 (1/28/11 Hearing Transcript), p. 30.  Thus, under such an absurd view of law, it is somehow okay for WWE to suggest it is Owen Hart, but not state that it is Owen Hart.

Mrs. Hart is wrong. The 3/28/12 Order was not an invitation to plead frivolous allegations contrary to the Court's plain-language interpretation of the Booking Agreement that WWE nowhere agreed not to use Owen's legal name. Mrs. Hart's Opposition merely rehashes the same arguments that the Court previously considered and rejected in its 3/28/12 Order— namely, "Martha argues that legal names are included in the list of intellectual property that could *possibly* be designated as 'Original Intellectual Property,' but not in the list of intellectual property that could be designated 'New Intellectual Property.'" *Compare* Doc. 76, p. 6 (emphasis in original) *with* Doc. 92, pp. 13-16. As the Court correctly concluded in its 3/28/12 Order, "[a]lthough that is true, it is irrelevant." Doc. 76, p. 6. Mrs. Hart concedes that she can only restrict WWE's use of Owen's name if it constitutes OIP under the Booking Agreement. Because Owen's legal name was not designated OIP, as evidenced by the blank Schedule A, there is nothing in the Booking Agreement, or in law, that *prohibits* WWE from using his name.

The new allegation in the SAC "that Owen Hart was not Owen's 'ring name'" is both knowingly false[5] and irrelevant to the Court's prior determination that there is no OIP and proves only that this Plaintiff and her counsel will never cease acting in bad faith.[6] As purported

---

[5] Mrs. Hart and her counsel are judicially bound by their prior admission that "Owen occasionally wrestled under 'Owen Hart[.]'" Doc. 76, p. 12. As the Court found in its 3/28/12 Order, under the structure of Section 3 of the Booking Agreement, all "distinctive and identifying indicia" used by or associated with Owen's performance "in the business of professional wrestling or sports entertainment" constitutes New Intellectual Property if not claimed as OIP. *Id*. at 6. The prior admission that "Owen occasionally wrestled under 'Owen Hart'" necessarily forecloses argument as to whether "Owen Hart" is distinctive or identifying indicia used by or associated with his performance in the business of professional wrestling or sports entertainment that was not claimed as OIP.

[6] Mrs. Hart's gamesmanship is further demonstrated by her new take on Owen Hart's "legal name." In her FAC, she repeatedly refers to Owen's "legal name" as ***Owen James Hart***. Doc. 27, ¶¶ 1, 4, 33, 61-67, 71-73, 77, 81, 100, 110, 118-22. In the SAC, however, given her argument that Owen's legal name is supposedly different from his "ring name," she removes the references to Owen James Hart and instead now refers to Owen's legal name as ***Owen Hart***, the name he used when performing. *See* Doc. 77. Mrs. Hart's reference to Owen's legal name as "Owen James Hart" remains an admission in this litigation. *See Off'l Comm. of Unsec. Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[T]he allegations in the Second Amended Complaint are judicial admissions by

3

evidence that Mrs. Hart and her counsel have the requisite good-faith basis to allege that Owen Hart was not his ring name, Mrs. Hart offers the following definition of "ring name" from Wikipedia: "a stage name used by a professional wrestler, martial artist, or boxer. While some ring names may have a fictitious first name and surname, others may simply be a nickname, such as The Undertaker." Doc. 92, p. 13 n. 2. The Wikipedia entry says nothing about whether a wrestler's legal name also is his ring name when he actually uses his legal name while performing. Significantly, however, the same Wikipedia entry (attached as Ex. 1) includes an external link to a "Wrestlers Real Names List" deceptively—yet tellingly—omitted by Mrs. Hart, which addresses that very issue. The "Wrestlers Real Names List" (attached as Ex. 2) contains two columns—wrestlers' ring names in the left column and real names in the right column. Many of the wrestlers have the same name listed as their ring name as well as their real name, ***including, specifically, Owen Hart***.[7] Thus, Mrs. Hart's gamesmanship regarding Owen's ring name ultimately exposes another round of deception in pleading—a hallmark in this case.[8]

---

which Color Tile Committee was bound throughout the course of the proceeding.") (internals omitted); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that such [superseded] pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party.").

[7]  This "Wrestlers Real Names List" is consistent with other Wikipedia entries regarding wrestlers' ring names versus real names. The Wikipedia entry for List of WWE alumni (attached as Ex. 3) includes a column for "Name" and a separate column for "Ring name(s)" along with each wrestler's tenure with WWE. Once more, many of the wrestlers have the same name listed as their legal name and ring name. In particular, the entry for Owen Hart again lists his name as "Owen Hart" and his ring names as both "The Blue Blazer" and "Owen Hart." In fact, given (a) Mrs. Hart's self-proclaimed passion for protecting the name "Owen Hart," (b) her fondness for Wikipedia, and (c) Wikipedia's receptivity to public comment and revision, it is ironic, to say the least, that Owen Hart's Wikipedia page (attached as Ex. 4) also identifies "Owen Hart" as one of his ring names.

[8]  Mrs. Hart also argues that "the fact that WWE has not prohibited other wrestlers similar to Owen from continuing to wrestle under their legal names after leaving WWE demonstrates that a wrestler's legal name is not New Intellectual Property. Jeff Jarrett, for example, famously wrestled without a ring name for WWE at the same time as Owen and then continued using his legal name in a competing wrestling enterprise after leaving the WWE." Doc. 92, p. 17. While the intellectual property of any other wrestler is governed by that wrestler's individual booking agreement and thus has no relevance to this

4

### 2. Mrs. Hart's Claim that OIP Reverted to the Estate Is Barred by the Release

Mrs. Hart cannot reasonably dispute that the basis for her claim that WWE is prohibited from using Owen's legal name is as follows:  On the day Owen died (May 23, 1999), the Booking Agreement automatically terminated and any OIP, allegedly including the right to use Owen Hart's legal name, reverted to the Estate, contractually prohibiting WWE from ever using his legal name again.  To be sure, this Court has already rejected this reversionary claim as meritless.  Nevertheless, it is also independently barred from assertion by a Settlement Agreement specifically intended to resolve all claims arising out of that event.

In an attempt to avoid the plain language of the Settlement Agreement, Mrs. Hart first asserts that it did not specifically address the use of intellectual property because it was supposedly limited to settling the wrongful-death claims.  Mrs. Hart, however, is bound by the actual terms of the Release in the Settlement Agreement, which expressly released WWE from "***all claims*** . . . ***of every kind and nature whatsoever***, whether known or unknown . . . that [the Estate of Owen Hart] had or may now have . . . as may have arisen or has arisen, in connection with any and all matters ***arising out of or relating to the death of Owen Hart*** . . . ."  Doc. 38-2, p. 4, ¶ 1 (emphasis added).  The Settlement Agreement contained other provisions plainly ***acknowledging*** that it was ***not*** limited to only the personal injury claim but was expressly intended to preclude "any further or additional claims . . . arising out of the death of Owen Hart." *Id.*, p. 5, ¶ 4.  Fatally, Mrs. Hart does not dispute that, by its terms, this Release was intended to be a general release; nor does she attempt to reconcile her characterization that it was limited to wrongful-death claims with the specific terms acknowledging that it was ***not*** so limited.  She

---

case, Mrs. Hart's argument is again belied by the fact that the Wikipedia entry for Jeff Jarrett in the List of WWE alumni (attached as Ex. 5) identifies Jeff Jarrett as both his "Real Name" and "Ring Name," contrary to Mrs. Hart's assertion that he "famously wrestled without a ring name for WWE."  Similarly, the Wikipedia entry for Jeff Jarrett (attached as Ex. 6) lists his ring name as Jeff Jarrett.

5

similarly makes no attempt to distinguish Missouri law holding that a general release "disposes of the entire subject matter involved" and, in the absence of any express limitation or restriction, "will be interpreted to be a complete and final settlement of all matters between the parties to the release." Doc. 82, p. 25.  Not only did she not claim any express limitation on the scope of the general release, she specifically acknowledged that the release was to preclude forever any claims in addition to the personal-injury claims if those claims arose out of Owen's death.

Mrs. Hart then asserts that the OIP reversionary claim does not "arise out of Owen's death" but rather "arise[s] solely out of termination of the Booking Agreement." Doc. 92, p. 21.  This is a distinction without a difference because ***the termination arose out of his death***.  Owen's Booking Agreement expressly provided, "This Agreement will be terminated by WRESTLER's death during the term."  Doc. 77-1, p. 16, ¶ 11.2.  Although, as Mrs. Hart notes in her Opposition, "the Booking Agreement could have terminated any number of ways," Mrs. Hart does not and cannot dispute that the way it terminated in fact was because of Owen's death.  Doc. 92, p. 22.  She, therefore, equally cannot dispute that the OIP reversionary claim arose out of Owen's death and, as such, is barred by the plain language of the Settlement Agreement.

### 3. Mrs. Hart Does Not Contest WWE's First Amendment Arguments

Glaringly absent from Mrs. Hart's Opposition is any response to WWE's argument that the First Amendment in all events protects the use of Owen's name in publishing historical information about his participation in matches on behalf of WWE.  *See* Doc. 82, pp. 29-33.  Mrs. Hart also does not and cannot dispute the hornbook (or, more precisely, Restatement) rule that right-of-publicity law does not even apply to the use of a person's identity in a biography or documentary about that person, or in advertising and promotion for any such work.  *See id.* at 32-33.  This is the reason that unauthorized biographies, celebrity documentaries, and

"docudramas" based on true stories "ripped from the headlines" unquestionably are legally permitted.

Rather than address these dispositive arguments, Mrs. Hart merely rehashes the arguments asserted in opposition to WWE's prior motion to dismiss—none of which respond to the principles described above.  Those arguments were fully addressed in WWE's Reply to Plaintiff's Opposition to Motion to Dismiss (Doc. 54) and are incorporated herein by reference.[9]

**B.     Mrs. Hart Does Not Oppose the Dismissal of Lanham Act or Right-of-Publicity Claims Based on the Use of Owen's Likeness**

Although the Court's 3/28/12 Order gave Mrs. Hart leave to plead a narrow right-of-publicity claim based on the use of two family photos in the Hart Anthology DVD, the SAC fails to assert any such discrete claim.  Instead, the SAC remains littered with vague references to uses of Owen's likeness.  WWE, therefore, again set forth in its Motion to Dismiss the multitude of reasons such a claim is legally defective.  In her Opposition, Mrs. Hart failed to contest any of those legal arguments and rather admitted in the opening sentence of her brief that "[t]he primary issue before the court is whether ***Owen Hart's legal name*** is in the category of property to which [WWE] contractually relinquished all rights after termination of the Booking Agreement, i.e., Old Intellectual Property [*sic*]"—making no mention of Owen's likeness.  Doc. 92, p. 10 (emphasis added).[10]  All claims in the SAC based on Owen's likeness, therefore, should be

---

[9]     Mrs. Hart cites two new cases in her Opposition, both completely inapposite.  The issue in *Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113 (D. Minn. 2010), was the footage in the content of the videos at issue, but Mrs. Hart admits she is not challenging "the use of wrestling footage in the DVDs" in this case.  Doc. 92, p. 24 n. 6.  *Pooley v. Nat'l Hole-In-One Ass'n*, 89 F. Supp. 2d 1108 (D. Ariz. 2000), involved the unauthorized use of the plaintiff's likeness in an advertisement for the defendant in contrast to the admittedly authorized depiction of Owen in the WWE works here.

[10]    The only two places in the Opposition where Owen's likeness is referenced whatsoever are in connection with the Lanham Act and CUTPA claims.  In neither context, however, does Mrs. Hart contend that such claims are based on use of Owen's likeness.  With regard to the Lanham Act, Mrs. Hart asserts that "[t]o prevail on a Lanham Act claim, a celebrity is required to show that the product—here the DVDs with Owen's name on them—created a likelihood of confusion that Hart endorsed them"—with no

7

deemed abandoned and dismissed as a matter of law.[11]

## C.     Mrs. Hart's Copyright Infringement Claim Remains Legally Defective

The Court's 3/28/12 Order ruled that Mrs. Hart's copyright claim was defective because she "did not allege in her complaint that it was the former copyright owner whose copyright had been infringed" and she could assert only "a violation of rights of the original owner." Doc. 76 at 19-20.  The SAC, however, continues improperly to allege that "***Martha Hart*** has been substantially harmed by this violation of her copyright."  Doc. 77, p. 17, ¶ 91 (emphasis added). She does not allege that the rights of the original copyright owner have been harmed or that she is suing to recover the damages of the assignor.  Mrs. Hart's Opposition fails to address these deficiencies.  As such, Mrs. Hart's copyright infringement claim remains legally defective.

## D.     Mrs. Hart's Claims Against Mr. and Mrs. McMahon Fail as a Matter of Law

Mrs. Hart's Opposition concedes that the sole basis for all but one claim against the McMahons is based on WWE's use of Owen Hart's name.  Because the Court has already ruled

---

mention of Owen's likeness.  Doc. 92, p. 40.  Mrs. Hart also asserts that "Owen's legal name has acquired . . . secondary meaning" but again makes no assertion that Owen's likeness has acquired secondary meaning, which is one of several requisites to maintain a Lanham Act claim.  *Id.* at 41.  Similarly, with regard to CUTPA, Mrs. Hart repeatedly asserts that WWE's use of Owen's name supports her CUTPA claim with no mention of Owen's likeness.  *See id.* at 43-44 ("WWE's continued use of Owen's legal name, in spite of its contractual agreements to the contrary, is also a 'significant aggravating circumstance' as required by Connecticut law. . . . Unscrupulously profiting from Owen's legal name . . . are near-textbook examples of 'immoral, unethical, oppressive, or unscrupulous behavior. . . . WWE has now been exploiting Owen's legal name through its *Hart & Soul* DVD . . . without Hart's consent for over two years.").

[11]    *See Brodsky ex rel. S.B. v. Trumbull Bd. of Educ.*, Civil No. 3:06cv1947 (PCD), 2009 WL 230708, at *9 (D. Conn. Jan. 30, 2009) ("In their Opposition to the Motion for Summary Judgment, Plaintiffs fail to provide any response to these arguments.  In their Reply, Defendants argue correctly that Plaintiffs' failure to address these arguments in their opposition papers constitutes abandonment of the claims."); *Lewis v. Town of Waterford*, No. 3:04CV1194(DJS)(TPS), 2006 WL 2401646, at *2 (D. Conn. Aug. 17, 2006) ("As a result of the plaintiff's failure to respond to the defendants' arguments, the court finds that the plaintiff abandoned the claims."); *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's [summary judgment] arguments that the claim should be dismissed.").

that Owen's name does *not* constitute OIP under the Booking Agreement, all of the name-based claims against Mr. and Mrs. McMahon personally likewise must again be dismissed on this basis alone. Additionally, Mrs. Hart has not overcome the following additional legal defects.

### 1. Mrs. Hart Has Not Alleged Sufficient Facts to State a Claim for Right of Publicity or Appropriation of Likeness Against the McMahons

Mrs. Hart concedes in her Opposition that her claims against Mr. and Mrs. McMahon must be dismissed unless there are specific factual allegations in the SAC sufficient to support a claim that the McMahons ***personally participated in or directed*** the alleged tortious activity. Doc. 92, p. 44. There are no well-pled allegations in the SAC that Mr. or Mrs. McMahon personally participated or directed anything. The SAC alleges the McMahons participated in DVD marketing "upon information and belief" and they "knew or should have known" of WWE's use of Owen's legal name. *See* Doc. 77, ¶¶ 58-69, 119-120. Such bald allegations based on what officers or directors "knew or should have known" are inadequate to state personal claims against them as a matter of Second Circuit law. *See* Doc. 84, pp. 10-11.[12]

In reality, Mrs. Hart's claims against Mr. and Mrs. McMahon are based on nothing more than personal animus and the fact they were high-ranking officials while WWE used Owen Hart's name.[13] If Mrs. Hart's generic allegations of the McMahons' ultimate or overall

---

[12] *See Valentine v. Nat'l Sports Servs.*, No. 3:03CV153DJS, 2005 WL 1185800, at *3 (D. Conn. May 18, 2005) (dismissing tort claims against president of corporate defendant because there was no evidence that president engaged in the specific tortious act that formed the basis for plaintiff's claims); *see also In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 550 (S.D.N.Y. 2007) (holding, in the context of pleading scienter in a securities fraud case, "officers cannot be imputed with knowledge about all transactions which occur at a corporation").

[13] Similarly, Mrs. Hart concedes that the copyright-infringement claim against Mr. McMahon is premised entirely on Mr. McMahon's position as the CEO and majority shareholder of WWE, not any actions taken by him. Doc. 92, p. 48. Rather than acknowledge that this allegation is insufficient on its face, Mrs. Hart again resorts to misapplying the law and mischaracterizing her allegations. First, in all three of the cases relied upon by Mrs. Hart that imposed individual copyright infringement liability on an officer of a corporation, the individual defendants were "one-man" shows who were directly involved in the alleged infringing activities. Here, Mrs. Hart does not and cannot allege that a publicly-traded

responsibility for WWE's commercial activities were sufficient to state a claim for individual liability, then they would be individually liable for every WWE business act, and executives everywhere would be at enormous risk. This plainly is not the law.

### 2. Mrs. Hart Cannot Maintain Negligent Supervision Against the McMahons

Mrs. Hart does not dispute that a requisite element of a claim of negligent supervision is that the defendant must owe a duty of care to the plaintiff. *See* Doc. 92, p. 47. Yet Mrs. Hart does not plead any circumstances that would give rise to an individual duty owed by either of the McMahons to the Estate of Owen Hart to ensure WWE did not use Owen Hart's name. The Booking Contract cannot be the basis for any duty not to use Owen's name by the McMahons even if such a promise had been made—which it was not—because they are not parties to the contract. *Sturm v. Harb. Dev., LLC*, 2 A.3d 859, 870-71 (Conn. 2010).

Likewise, there are no allegations in the SAC that any WWE employee had a "propensity to engage" in tortious conduct toward the Estate or Mrs. Hart—or that any employee of WWE would even think it was tortious to use Owen's name on covers of DVDs to accurately describe the contents.[14] Because the SAC lacks any facts to support a claim that the McMahons owed a duty to supervise WWE employees so as not to use Owen's name on DVD covers, Plaintiff's negligent supervision claim must be dismissed for that additional reason.

---

corporation like WWE is a "one-man show" or that Mr. McMahon had any direct involvement in the alleged infringement of the copyrighted photographs of Owen and his family. Second, Mrs. Hart claims that "[b]ased on discovery provided to date," Mr. McMahon had direct personal input into the content of the Video. *Id.* at 49. Yet her support for that statement (SAC ¶¶ 66-67) alleges no such thing. Instead, the allegation is that "[u]pon information and belief" Mr. McMahon "knew or should have known" of the content. This is just another way of saying that because Vince McMahon is the CEO of WWE, he had the "right and ability" to oversee WWE's activities—but this does not create personal liability under the law.

[14] Mrs. Hart disingenuously argues that WWE's citation to *Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341 (D. Conn. 2001), for the controlling law on negligent supervision relieves her from satisfying the pleading requirements set forth in *Iqbal*. Doc. 92, p. 48. To the contrary, the Court in *Abate* expressed "serious reservations" about the plaintiff's bald allegations but found them sufficient under the then-applicable pleading standard. The law after *Iqbal* no longer allows such thin allegations to survive.

10

## II. CONCLUSION

For all of the foregoing reasons and the reasons set forth in Defendants' opening briefs, this Court should dismiss all counts in the Second Amended Complaint in their entirety with prejudice, except Count IV seeking royalties against WWE.  All claims against the McMahons should be dismissed.

Respectfully submitted,

/s/ Jerry S. McDevitt, Esquire
Jerry S. McDevitt (ct11783)
Curtis B. Krasik (ct20427)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-8608

Jonathan B. Tropp (ct11295)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

*Attorneys for Defendants*
*World Wrestling Entertainment, Inc.,*
*Vince McMahon and Linda McMahon*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of September, 2012, the foregoing **DEFENDANTS' REPLY TO HART'S CONSOLIDATED OPPOSITION TO WWE'S AND MCMAHON'S MOTIONS TO DISMISS** was served on the following counsel through the Court's CM/ECF System:

Gregg Rubenstein
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131

/s/ Jerry S. McDevitt, Esquire
Jerry S. McDevitt